**UNITED STATES of America**

v.

**John Henry MORGAN.**

**Cr. No. 3–82–48.**

United States District Court,
E.D. Tennessee, N.D.

Oct. 7, 1982.

J. Polk Cooley, Rockwood, Tenn., for defendant.

Thomas Dillard, U.S. Atty., Knoxville, Tenn., for the U.S.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

In this criminal case the Grand Jury charges that on or about the 13th day of June, 1982 in the Eastern District of Tennessee, John Henry Morgan willfully and knowingly possessed a firearm, to-wit: an RPB Industries .45 caliber pistol Model M–10, converted to fully automatic, which had not been registered to him in the National Firearms Registration and Transfer Record, as required by Chapter 53, Title 26, United States Code. 26 U.S.C. §§ 5861(d) and 5871.

Defendant has filed a motion to suppress all items of evidence obtained as a result of the search and seizure of the defendant and the premises occupied by him in Harriman, Tennessee on June 13, 1982. He also seeks to suppress all written or oral statements made by him. He says that the searches and seizures, including the arrest, were illegally made without a warrant. Defendant says that at the time of the entry upon the premises occupied by him, there was no probable cause to believe that he had committed a felony, and there was no observation by the arresting officer of a misdemeanor committed by the defendant. He says any statements that he made were obtained as a result of a violation of his rights, and as the result of the illegal search and seizure, including the arrest.

The Government relies upon alleged exigent circumstances and the plain view doctrine for the arrest. In the opinion of the Court, the plain view doctrine does not apply. Neither did exigent circumstances exist in this case. The officers, in the opinion of the Court, should have obtained an arrest and/or search warrant.

The evidence shows that on the evening of June 13, 1982, Deputy Roger Reynolds and Deputy Teddy Bales of the Morgan County Sheriff's Department received a complaint of people firing weapons in the Potter's Falls area of Morgan County. The officers drove to the Potter's Falls area. Deputy Reynolds heard what he thought was gunfire from an automatic weapon. The officers found five or six people who had been shooting into a clay bank, commonly used for target practice. The officers went up to the people, told them of the complaint, and asked them to quit shooting and leave. An unnamed bystander told Deputy Reynolds that one of the group said they would shoot anyone who attempted to interfere with them. The weapons had been placed in the truck of a 1970 blue Cadillac with non-Tennessee license plates and a "95" prefix. After telling the people to leave and talking to the bystander the officers drove back to the Sheriff's office for assistance.

Law enforcement officers from Morgan and Roane Counties and the city of Harriman were alerted. Approximately an hour after Deputies Reynolds and Bales left the Potter's Falls area, the Cadillac was located at the residence of defendant's mother in Harriman. Nine officers soon arrived and surrounded the house. Officer Thomas Alcorn of the Harriman Police Department drove his car in front of the house and parked to the rear and right of the Cadillac, inside the yard. His car lights were off. Officer Alcorn then turned bright floodlights on the house. He called over a loud speaker for defendant to come out.

In the meantime, defendant, his wife, and three others had taken the guns into the living room of the house where defendant was staying at the time. Defendant's wife saw the outline of Officer Alcorn's car coming up the alley to the house. She did not know who it could be. She alerted defendant. He then picked up a weapon and stood behind the front screen door. When called out by Officer Alcorn, defendant put the gun down inside the house and went outside. The police then called the others from the house and searched for weapons.

> It has been consistently held that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject

only to a few specifically established and well-documented exceptions.

*Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

■ The Government first contends that there was no search in this case since plaintiff came to the door with a weapon "in plain view" of Officer Alcorn. The plain view doctrine, however, has been limited to instances where an officer had "a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). We do not find a prior justification for Officer Alcorn's entry onto the property without a search or arrest warrant. This is not a case where the officers were in "hot pursuit" of a fleeing felon, *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), or were monitoring the activities of one already under arrest. *See Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). Before arriving at the house, the officers only knew that a car parked at the house had been seen where people had been target shooting, and that two officers thought they heard automatic gunfire in the area of the shooting. Although a bystander at the Falls told the officers that violence had been threatened, the identity of the bystander and his reliability remain a mystery. *See Beck v. Ohio,* 379 U.S. 89, 93–94, 85 S.Ct. 223, 226–27, 13 L.Ed.2d 142 (1964). All evidence shows that the people left the Potter's Falls area peacefully and were quietly sitting at home when the startling police intrusion took place.

■ The Government contends that it had probable cause to search and arrest the defendant based on the above information. Even if the officers did have probable cause, we do not believe exigent circumstances required proceeding without a warrant. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

The evidence shows that three judicial officials who were authorized to issue search warrants lived in the city of Harriman or close outside the city limits. The police officers made no attempt to contact any of these judges before defendant's arrest. According to the testimony of Officer Thomas Alcorn, an hour elapsed from the time defendant was told to leave the Potter's Falls area and the discovery of the Cadillac in Harriman. Nine officers from Harriman, Roane County, and Morgan County were involved in the arrest. In the opinion of the Court, there was sufficient time to obtain a search warrant. If any of the occupants of the home had undertaken to leave, one or more of the officers could have prevented his leaving until a warrant was obtained.

■ The Government says that proceeding quickly was necessary because of the potential danger of the weapons in the Harriman residential neighborhood. The evidence, however, shows that the occupants of the house were peaceful until startled by Officer Alcorn's car coming up their driveway in a clandestine manner. Defendant immediately left the house when called out. It appears that the officers, in their overzealous attempt to arrest defendant, at least contributed to any exigent circumstances that arose. Reasonable searches may be undertaken for the protection of the public and police officers even if there is no probable cause to arrest for a crime. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). This rule, however, does not allow officers to create a situation in which to justify a warrantless search.

The home in America is a sacred place. For officers to enter a home without a search warrant, the circumstances must be extraordinary. In the opinion of the Court, the circumstances known by the officers should have been sufficient to create probable cause for the issuance of a search warrant. We find, however, that these circumstances did not justify the warrantless entry onto the property and the subsequent search of the house in this case. Failure to obtain a warrant prevents all of the evi-

dence obtained during the warrantless entry from being competent at the trial on the merits.

It is, therefore, ORDERED and ADJUDGED that the motion to suppress be, and the same hereby is, sustained.

Order Accordingly.